## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED ACCESS TECHNOLOGIES, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 11-339-LPS |
| | : |
| CENTURYTEL BROADBAND SERVICES, LLC and QWEST CORPORATION, | : |
| | : |
| Defendants. | : |

Stamatios Stamoulis, Esq., Richard C. Weinblatt, Esq., STAMOULIS & WEINBLATT LLC, Wilmington, DE.
Michael W. Shore, Esq., Alfonso Garcia Chan, Esq., Jennifer M. Rynell, Esq., Daniel F. Olejko, Esq., SHORE CHAN BRAGALONE DEPUMPO LLP, Dallas, TX.

   Attorneys for Plaintiff United Access Technologies, LLC.

Matt Neiderman, Esq., DUANE MORRIS LLP, Wilmington, DE.
L. Norwood Jameson, Esq., Matthew C. Gaudet, Esq., David C. Dotson, Esq., DUANE MORRIS LLP, Atlanta, GA.

   Attorneys for Defendants CenturyTel Broadband Services, LLC and Qwest Corporation.

## MEMORANDUM OPINION

December 20, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (D.I. 41) Defendants argue that Plaintiff's infringement claims should be dismissed by application of the doctrine of collateral estoppel. The Court agrees and, for the reasons stated below, will grant Defendants' motion.

## I.    BACKGROUND

On April 15, 2011, Plaintiff United Access Technologies, LLC ("Plaintiff" or "UA") filed this patent infringement action against dozens of defendants, including CenturyTel Broadband Services, LLC (d/b/a CenturyLink, Inc.) and Qwest Corporation (collectively, "Defendants"), alleging infringement of three patents. (D.I. 1) The patents-in-suit are U.S. Patent No. 5,844,596 (the "'596 patent"), entitled "Two-way RF Communication at Points of Convergence of Wire Pairs from Separate Internal Telephone Networks;" U.S. Patent No. 6,243,446 (the "'446 patent"), entitled "Distributed Splitter for Data Transmission Over Twisted Pairs;" and U.S. Patent No. 6,542,585 (the "'585 patent"), entitled "Distributed Splitter for Data Transmission Over Twisted Wire Pairs." The patents-in-suit relate to systems for transmitting and receiving video signals over the same telephone line used for voice signals.

On October 31, 2012, Defendants filed their motion for judgment on the pleadings based on collateral estoppel. (D.I. 41) The parties completed briefing on November 29, 2012. (D.I. 42, 46, 52) On April 12, 2013, the Court granted the parties' stipulated request to stay the case pending resolution of Defendants' motion. (*See* D.I. 68) The Court heard argument on the motion on July 29, 2013. (D.I. 78) (hereinafter "Tr.").

## II.    LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the

pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." When

evaluating a motion for judgment on the pleadings, the Court must accept all factual allegations

in a complaint as true and view them in the light most favorable to the non-moving party. *See*

*Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). A Rule 12(c) motion will not be

granted "unless the movant clearly establishes that no material issue of fact remains to be

resolved and that he is entitled to judgment as a matter of law." *Id.*; *see also Maio v. Aetna, Inc.*,

221 F.3d 472, 482 (3d Cir. 2000). This is the same standard as a Rule 12(b)(6) motion to

dismiss. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). "The purpose

of judgment on the pleadings is to dispose of claims where the material facts are undisputed and

judgment can be entered on the competing pleadings and exhibits thereto, and documents

incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC,* 541 F. Supp. 2d 612, 617 (D.

Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.

1997) (explaining that any documents that are integral to pleadings may be considered in

connection with Rule 12(c) motion).

## III.    DISCUSSION

Defendants contend that the case should be dismissed based on the application of

collateral estoppel. It is undisputed that in an earlier case filed by Plaintiff's predecessor, Inline

Connection Corporation ("Inline") – which at the time owned the patents-in-suit – a jury returned

a verdict of non-infringement; this Court then denied Inline's motion for judgment of

infringement as a matter of law ("JMOL"); and, on appeal, the Federal Circuit affirmed this

Court. *See United Access Technologies, LLC v. EarthLink, Inc.*, C.A. No. 1:02-cv-00272-MPT

(D. Del.) ("*EarthLink*"), *aff'd*, 432 F. App'x 976 (Fed. Cir. 2011).

Although this is a patent case, with respect to issues of collateral estoppel the Federal

Circuit directs that a District Court apply the law of the regional circuit court. *See Transocean*

*Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1311 (Fed.

Cir. 2010) ("We analyze collateral estoppel under the law of the regional circuit."). Thus, the

Court will apply Third Circuit law on collateral estoppel. *See Novartis Pharm. Corp. v. Abbott*

*Labs.*, 375 F.3d 1328, 1333 (Fed. Cir. 2004) (applying Third Circuit test for collateral estoppel).

The Third Circuit has "identified four standard requirements for the application of

collateral estoppel in our case law: (1) the identical issue was previously adjudicated; (2) the

issue was actually litigated; (3) the previous determination was necessary to the decision; and

(4) the party being precluded from relitigating the issue was fully represented in the prior action."

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (internal

citations omitted). The Third Circuit has "also considered whether the party being precluded had

a full and fair opportunity to litigate the issue in question in the prior action, and whether the

issue was determined by a final and valid judgment." *Id.* (internal quotation marks omitted). As

discussed below, Defendants have met each part of the collateral estoppel test.

### A.    Identical Issue

Defendants contend that the issue before the Court – whether industry standard ADSL[1]

can satisfy any claim element of the patents-in-suit – was already adjudicated in a prior suit,

specifically *EarthLink*. Defendants argue, therefore, that the identical issue was previously

---

[1]ADSL stands for asymetric digital subscriber line and is a type of digital subscriber line
technology, used for transmitting data over traditional telephone lines. The particular standard
involved here is ANSI T1.412-2001, promulgated by the American National Standards Institute
("ANSI"). (*See* D.I. 42 Ex. B at 145)

3

adjudicated in the earlier *EarthLink* case. Further, Defendants assert that Plaintiff has waived its

opportunity to try to identify meaningful differences between their accused products and those at

issue in *EarthLink*. (D.I. 42 at 10) The Court agrees.

In order to understand the Court's conclusion, it is necessary to explain the procedural

posture of this case. At the outset of this case, in connection with consideration of the initial

scheduling order (D.I. 33-1), Defendants identified the collateral estoppel effect of *EarthLink* as a

potentially case-dispositive issue that should be addressed by the Court as soon as possible.

Defendants argued:

> CenturyLink's ADSL services are industry standard services, and
> thus by definition function in the same manner as EarthLink's
> industry standard ADSL services. Accordingly, and regardless of
> how United Access may try to re-label its theory, in substance
> United Access will attempt to prove infringement in this case by
> the very thing that has already been found not to infringe the
> patents-in-suit – industry standard ADSL. United Access's attempt
> to re-litigate the issue of infringement of industry standard ADSL
> should be precluded under the doctrine of issue
> preclusion/collateral estoppel, and early resolution of this issue will
> be case-dispositive on the issue of infringement.

(*Id.* at 16-17) In the parties' proposed joint scheduling order, UA disputed that the *EarthLink*

case involved the industry standard ADSL at issue in the present action, insisting:

> CenturyLink's cases are distinguishable. United Access's action
> against CenturyLink is not a second bite at the apple. The
> *EarthLink* case involved completely different parties and accused
> systems. Neither CenturyLink nor its accused "High-Speed
> Internet" services and/or products related to ADSL were at issue in
> the *EarthLink* case. Rather, the *EarthLink* case was targeted
> specifically at EarthLink's ADSL system, not "industry standard"
> ADSL.

(*Id.* at 11)

Given that both sides recognized the existence and potential importance of the collateral estoppel issue, the parties jointly proposed a procedure by which discovery would be "narrowly tailored to address [Defendants'] claims of res judicata, issue preclusion, and/or collateral estoppel." (D.I. 33-1 at 10) (referencing previous scheduling conference in related action of *United Access v. Frontier Comm'cs et al.*, C.A. No. 1:11-00341-LPS (D. Del.)) Following a scheduling conference, the Court adopted the language from the jointly proposed amended scheduling order (D.I. 35), thereby ordering Plaintiff, after some discovery, to articulate how Defendants' systems are different from those that were the subject of trial in *EarthLink*.[2] Specifically, the Court ordered that:

> Plaintiff will (1) provide a preliminary identification of asserted claims, accused instrumentalities, and claimed conception dates; *(2) specifically identify any features that form the basis for Plaintiff's allegation that Defendants' systems are distinguishable from the systems found not to infringe the patents-in-suit* in *United Access Technologies, LLC v. EarthLink, Inc.*, 02-272-MPT (D. Del.) (the "*EarthLink* case"); and (3) produce the file history for each asserted patent (including any abandoned patent applications related to the asserted patents), conception and reduction to practice documents, pre-application sale/offer to sell/third party disclosure documents on **August 10, 2012**.

(D.I. 36, ¶ 3(b) (emphasis added))[3]

_____

[2]The procedure adopted by the Court was initially proposed by the defendant in a related action pending before the undersigned judge. *See United Access Technologies, LLC v. Frontier Communications Corp.*, C.A. No. 11-341-LPS D.I. 18-1 ¶ 4.b. Following a scheduling conference, the Court adopted that defendant's proposal. *See id.* D.I. 24 at 9 ("I believe it appropriate given the history here that the plaintiff be made to focus on attempting to identify the features that form the basis for their allegation that the systems are distinguishable [from those in *EarthLink*]").

[3]Prior to submission of this joint proposal, the parties had submitted a version of a proposed scheduling order in which, in addition to this jointly-proposed requirement that Plaintiff provide

On August 10, 2012, UA provided Defendants with a preliminary disclosure that, in

pertinent part, consisted of a few sentences, identifying a single potential distinguishing factor.

UA disclosed:

> CenturyLink sells and offers to sell CenturyLink ADSL "bundled"
> with its telephone services to the vast majority of its customers.
> Thus, CenturyLink's telephone services as well as telephone
> devices are an integral part of the Accused Instrumentalities. Upon
> information and belief, EarthLink is not, and has never been, a
> telephone service provider like CenturyLink. Rather, EarthLink
> argued, and the district court accepted, that EarthLink's ADSL
> services operate separate and independent from the telephone
> services provided to its customers by other third-party carriers. As
> a result, the Court found that EarthLink's accused system ***did not
> include telephone devices***, but rather provided an "access service"
> that was "distinct from any service involving the use of a
> telephone."[4]

(D.I. 42 Ex. I, Plaintiff's August 10, 2012 Preliminary Disclosures at 4) (emphasis added;

quoting *EarthLink*, C.A. No. 02-272-MPT D.I. 698 at 66-69; internal citation omitted)

Plaintiff's proffered distinction, even if proven, does nothing to account for the fact that

the issue of whether industry standard ADSL infringes the patents-in-suit was litigated, and lost,

by Plaintiff in the *EarthLink* action. At best, Plaintiff's "telephone device" distinction could

---

early identification of "any features that form the basis for . . . distinguish[ing]" Defendants'
products from EarthLink's accused products, Defendants also sought the opportunity to file early
(on October 9, 2012) "a single dispositive motion on the issue of whether Plaintiff's claims are
barred by the doctrines of collateral estoppel or res judicata in view of the earlier litigation
between United Access and EarthLink" (D.I. 33-1 at 14). The Court discussed Defendants'
proposal with the parties during a scheduling conference (*see* D.I. 38), and denied it, but did so
"very much without prejudice to the defendants moving at any time that they think [they] can
prevail" (*id.* at 12). Eventually, rather than seek leave to file an early summary judgment motion,
Defendants filed the pending motion for judgment on the pleadings.

[4]The other components of UA's disclosure simply recite the same allegations from the original
complaint. (*See* D.I. 42 Ex. I at 3-4)

mean that Plaintiff's claims against Defendants in the instant matter are not barred by collateral estoppel on the basis of the *EarthLink* Court's denial of motions for judgment as a matter of law ("JMOL") based on the absence of the "telephone" elements in EarthLink's product. But that would only allow Plaintiff to overcome one of the bases on which it lost in *EarthLink*. Another reason a judgment of non-infringement was entered in that earlier action is that Plaintiff failed to show that industry standard ADSL was within the scope of the patents-in-suit.

In *EarthLink*, Plaintiff's predecessor (Inline) moved for judgment as a matter of law of infringement. (*See* D.I. 42 Ex. G) In response to Inline's JMOL motion, EarthLink argued that the trial "record allowed the jury to determine that Inline had not carried its burden with respect to infringement." (*Id.* at 62) EarthLink explained that on cross-examination, Inline's only infringement expert, Dr. Jackson, had proffered inconsistent testimony when analyzing, element-by-element, how the industry standard ADSL was covered by each claim of the patents-in-suit. (*See id.* at 64) (citing C.A. No. 1:02-cv-00272-MPT D.I. 649 at 169:21-170:21) In denying Inline's JMOL, the *EarthLink* Court held that after Dr. Jackson was impeached, a reasonable jury could find that Plaintiff had failed to meet its burden to prove infringement. (*See id.* Ex. G at 65)

Here, UA essentially ignores the impact of this second, independent basis for the finding of non-infringement in *EarthLink*. This is fatal to Plaintiff's case, as the Third Circuit "follow[s] the traditional view that independently sufficient alternative findings should be given preclusive effect." *Jean Alexander*, 458 F.3d at 255. Despite this Court's scheduling order compelling UA to "specifically identify any features that form the basis for Plaintiff's allegation that Defendants' systems are distinguishable" from those found not to infringe in *EarthLink*, UA made no disclosure – nor argument – that the ADSL addressed by the *EarthLink* Court in denying Inline's

7

JMOL motion was in any way distinct from industry standard ADSL at issue here.

Belatedly, *after* Defendants filed their Rule 12(c) motion, and well *after* the August 2012 deadline the parties jointly proposed and the Court ordered, UA attempted to point to an alleged distinction, by arguing that the CenturyLink/Qwest systems here involve industry standard ADSL while the EarthLink systems concerned an ADSL standard particular only to those systems. The Court finds UA waived the opportunity to rely on such a purported distinction, due to UA's failure to disclose such reliance in a timely manner as required by the scheduling order. In any event, UA's position appears to lack merit.[5]

Hence, because the issue presented here – whether industry standard ADSL as practiced by Defendants' accused systems is within the scope of the claims of the patents-in-suit – is the "identical issue [that] was previously adjudicated" in the *EarthLink*, the first element of collateral estoppel is established.

### B.   Necessary to the Decision

To satisfy the requirements of collateral estoppel, the issue must also have been necessary to the earlier decision. *See Jean Alexander*, 458 F.3d at 249.  UA contends that what was necessary to the *EarthLink* JMOL decision was only EarthLink's ADSL system, and thus the industry standard ADSL was never necessary to the decision. The Court is not persuaded by Plaintiff's argument.

In reaching its decision on the independent "failure of proof" basis for denying JMOL, the *EarthLink* Court evaluated EarthLink's argument that Dr. Jackson's testimony was heavily

---

[5]The next section of this Opinion explains how the industry standard ADSL was already litigated in the *EarthLink* action.

impeached, including "admissions the jury could have taken to support non-infringement

positions." (*See* D.I. 42 Ex. G at 64) (citing C.A. No. 1:02-cv-00272-MPT D.I. 649 at 169:21-

170:21 (Jackson Cross)) On direct, Dr. Jackson testified: "I have gone through and tried to

explain how ***standard splitterless ADLS*** [*sic*] have identified with each of the elements in that A

[section] of the claim." (C.A. No. 1:02-cv-00272-MPT D.I. 646 at 170)[6] Here, Dr. Jackson was

referring to his evaluation of the EarthLink splitterless ADSL as infringing the patents-in-suit by

using an element-by-element comparison of the "industry standard" ADSL – which the

EarthLink ADSL incorporates – to the claims:

> Q: You have prepared some diagrams to explain to the jury,
> building block by building block, what is in ***the industry standards***
> ***ADSL*** that corresponds to the various building blocks?
>
> A: Yes I have.

(*Id.* at 166) (emphasis added) Indeed, when asked to explain his infringement analysis, and in

particular to clarify if what he meant by comparing the claims with the "accused system" was that

"you compared it to EarthLink's system?," Dr. Jackson responded: "Right. I compared most of

the standard, ***industry standard ADSL*** for which I knew to be the system used by" EarthLink.

(*Id.*) (emphasis added)

    Ultimately, the Court agreed with EarthLink, finding that "a reasonable jury could have

determined that Jackson was impeached during his testimony and, therefore, lacked credibility."

(D.I. 42 Ex. G at 65) Based on that finding, the Court held, as an independent alternative basis to

deny Plaintiff's motion for JMOL, that "the jury could reasonably have returned its non-

infringement verdict." (*Id.*) It is clear from the testimony cited in the *EarthLink* Court's JMOL

---

[6]Section "A" refers to one of the "building blocks" discussed below.

opinion – and the related testimony to which those statements make reference – that the JMOL concerned the same "industry standard" ADSL as is at issue here.

Therefore, the Court finds that industry standard ADSL was at issue in *EarthLink* and, in turn, that the determination of whether that industry standard was within the scope of the patents-in-suit was necessary to the resolution of the *EarthLink* action.

## C.    Actually Litigated

It is undisputed that direct infringement claims were "actually litigated" in *EarthLink*. (D.I. 42 at 19) (citing Ex. G, *EarthLink* JMOL Order at 62) Plaintiff's only response on this element of collateral estoppel is that its theories of indirect infringement – namely inducement and contributory infringement – were never actually litigated. (D.I. 46 at 20) Plaintiff's argument carries no force. As Plaintiff is estopped from putting on its direct infringement case, Plaintiff likewise cannot prove an indirect infringement case. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement."); *see also ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (reversing district court's JMOL sustaining jury verdict of induced infringement because plaintiff failed to show the "threshold requirement of direct infringement").

## D.    Fully Represented

UA concedes that Inline is its "predecessor[]-in-interest."[7] (*See* D.I. 52 at 1) ("United Access purchased the Asserted Patents after Inline filed its notice of appeal.") Therefore, the

---

[7]Before it purchased the patents-in-suit, United Access had no past or present affiliation with Inline and took no part in the original trial of the *EarthLink* case. (D.I. 46 at 3)

10

fourth collateral estoppel requirement is satisfied because UA – through Inline – had a full and fair opportunity to litigate the issue in *EarthLink*. *See Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1572 (Fed. Cir. 1983) (finding non-party may be collateral estopped "if one of the parties to the earlier suit is so closely aligned with the non-party's interests as to be its virtual representative").

### E. Summary Judgment

Plaintiff also argues that Defendants' motion should be denied because, although styled as a motion for judgment on the pleadings, it is in actuality a motion for summary judgment, because Defendants rely on several documents outside the pleadings. (D.I. 46 at 10; *see also* Fed. R. Civ. P. 12 ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")) However, in resolving a Rule 12(c) motion (like a Rule 12(b)(6) motion), "a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *see also Galderma Labs. Inc. v. Amneal Pharm.*, LLC, 2012 U.S. Dist. LEXIS 127463 (D. Del. Sept. 7, 2012) (considering prior opinion in applying collateral estoppel). Additionally, Plaintiff's argument confuses whether collateral estoppel requires a party to prove "the ***existence of prior proceedings***," which is proper on a motion for judgment on the pleadings, *see S. Cross*, 181 F.3d at 427 n.7 ("[J]udicially noticing the existence of a published opinion is proper to resolve a 12(b)(6) motion") (emphasis added), or, rather, "the ***truth of facts averred*** in those proceedings," which would be improper in the present procedural posture, *see id.* (emphasis added). Here, Defendants – like the Court – rely on

11

the *EarthLink* proceedings, including its trial transcripts – only to show that the identical issue

was actually and necessarily litigated, and not for the truth of facts averred in those proceedings.

*See S. Cross*, 181 F.3d at 426 ("[O]n a motion to dismiss, we may take judicial notice of another

court's opinion – not for the truth of the facts recited therein, but for the existence of the opinion);

*id.* at 427 n.7 ("It has been suggested that the appropriate analogy is the hearsay rule, which

allows an out-of-court statement to be admitted into evidence for purposes other than

establishing the truth of the statement."). For instance, the *EarthLink* material is relied on to

show that the issue of whether industry standard ADSL is within the scope of the patents-in-suit

was litigated, and that judgment was entered based on findings of non-infringement; those

materials are not relied on here to establish the truth of whether industry standard ADSL actually

is within the scope of the patents-in-suit.

## IV. CONCLUSION

In sum, Plaintiff already litigated the identical issue of whether industry standard ADSL

is covered by any element of the three asserted independent claims of the '596, '446, and '585

patents-in-suit. Hence, the issue was actually litigated and necessary to the *EarthLink* JMOL

decision as an independently sufficient basis for judgment of non-infringement, and UA was

fully represented by Inline, which had a full and fair opportunity to adjudicate the issue. The

*EarthLink* action concluded with an enforceable final judgment, entered by this Court and

affirmed on appeal by the Federal Circuit. In the instant action, Plaintiff failed, by the deadline

imposed by the scheduling order, to disclose how the CenturyLink and Qwest accused systems

differ in any way from the EarthLink systems as relates to their use of industry standard ADSL.

Thus, the Court concludes that UA has offered no basis on which it could prove infringement by

Defendants of each of the elements of any claim of the patents-in-suit.

Accordingly, the Court will grant Defendants' Rule 12(c) motion. An Order consistent with this Memorandum Opinion will be entered.